**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                                                         3:12-cr-156-J-34MCR

CHARLES LEE GORISH
_____

# REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Motions to Suppress (Docs. 24, 27) filed November 30, 2012 and December 4, 2012, respectively.  The Government filed Responses in Opposition to Defendant's Motions on December 11, 2012 (Docs. 31, 32).  An evidentiary hearing was held before the undersigned on December 21, 2012.  For the reasons stated below, and based upon a review of the record as a whole, it is hereby **RECOMMENDED** that Defendant's Motions to Suppress (Docs. 24, 27) be **DENIED** in their entirety.

## I.   BACKGROUND

Defendant Charles Lee Gorish is charged with knowingly transporting in interstate and foreign commerce "visual depictions, the production of which involved the use of minors engaging in sexually explicit conduct" in a one count Indictment returned on September 19, 2012.  (Doc. 1).  The evidence which forms the basis for this charge consists of images and videos contained on two Micro SD cards seized pursuant to a

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  See 28 U.S.C. §636(b)(1) and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

search warrant issued on August 23, 2012, by Magistrate Judge Joel B. Toomey, Middle District of Florida, and oral statements of admission made by Defendant during the execution of a second search warrant at his residence on September 7, 2012. Defendant requests suppression of both the physical evidence and oral statements. (Docs. 24, 27).

## II.    EVIDENCE PRESENTED AT THE HEARING[2]

During the evidentiary hearing before the undersigned on December 21, 2012, the Government presented the testimony of the two law enforcement agents who participated in Defendant's arrest: (1) Special Agent Jonathon MacDonald ("SA MacDonald"), and (2) Special Agent Larry Meyer "SA Meyer"), both with the Federal Bureau of Investigation ("FBI").  There was no evidence presented by Defendant.

On August 16, 2012, through diplomatic channels, SA Meyer received the contents of a FedEx package that was intercepted by Canadian authorities.  (Tr. 9:13-16).  SA Meyer testified that, according to the Canadian authorities, the package contained, among other things, images and videos depicting minors engaging in sexually explicit conduct.  (Tr. 60:107).  The sender of the package was identified as Defendant.[3]

On August 23, 2012, based on the information provided by the Canadian authorities, SA Meyer applied for and received a search warrant issued by United

---

[2]    References to the transcript of the evidentiary hearing conducted on December 21, 2012, will be "Tr. Page number : line number(s)." Citations are to the filed transcript (Doc. 37).

[3]    Defendant has a criminal history which includes a 1992 conviction for child molestation. (Tr. 32:16).

-2-

States Magistrate Judge Joel B. Toomey authorizing the search of several items contained in the package described above, that is, (I) a black micro SD card labeled in white "Patriot Memory Micro SD 32GBHC"; (ii) a black micro SD card labeled in white "Micro SD HC 4GB" (collectively, "SD cards"), and (iii) a Samsung Galaxy S II cellular telephone. See (Gov. Ex. 12, 12A). Upon examination of the SD cards and cellular telephone, SA MacDonald testified that he observed thousands of images and hundreds of videos of prepubescent males in various states of nudity on the SD cards. (Tr. 10:20-23).

On August 29, 2012, SA Meyer and St. Johns County Sheriff's Office Detective Kevin Kier conducted a noncustodial and consensual interview of Defendant regarding the contents and origins of the SD cards at his residence in St. Augustine, Florida. (Tr. 63:16-20). Defendant was not placed under arrest or restrained at any time during this interview. (Tr. 65:1-4). SA Meyer testified that Defendant stated that he had purchased the SD cards at a flea market and was unaware of their contents.[4] (Tr. 71:2-5).

On August 31, 2012, SA Meyer applied for and received a second search warrant to search Defendant's residence and the computers therein.[5] (Gov. Ex. 13, 13A). SA Meyer testified that on the morning of September 7, 2012, he and Detective Kier arrived at Defendant's residence at approximately 8:20 a.m., 10-15 minutes before the other officers arrived, and presented Defendant with a copy of the search warrant.

---

[4] Defendant does not seek suppression of any statements made during this interview. (Tr. 64:5-11).

[5] Defendant does not challenge the validity of this second warrant for the search of his residence. See (Docs. 24, 27).

(Tr. 75:1-3, 85:18). Although this was not the standard protocol, SA Meyer testified that this was done because they previously interviewed Defendant and "left on good terms." (Tr. 88:5). At approximately 8:30 a.m., the other law enforcement officers arrived.[6] (Tr. 21:21). According to SA Meyer, Defendant was then escorted from the residence and advised that he was not under arrest, and that he could leave the premises if he so desired but he could not enter the residence while the search was underway due to the restricted space inside.[7] (Tr. 73:21-25, 74:1-4; Gov. Exs. 1-11).

During the execution of the search warrant, SA MacDonald and SA Meyer testified that Defendant walked around the property and tended to his two dogs. (Tr. 20:9, 75:17-20). Defendant smoked cigarettes and sat in the back seat of a patrol car to stay cool. (Tr. 20:9, 75:13-17). At certain points during the search, SA Meyer spoke with Defendant regarding items recovered during the search. At approximately 10:30 a.m., SA MacDonald approached Defendant and introduced himself. (Tr. 23:19-22, 40:4-7). SA Meyer and Detective Kier were also present at this time. SA MacDonald testified that he informed Defendant he was currently running a forensic program on his computer and had discovered the same pornographic material that he observed on the

---

[6] There were approximately 11 law enforcement officers present during the search warrant execution. (Tr. 44:7-9).

[7] The officers were specifically briefed not to block the driveway or Defendant's vehicle because he was free to go. (Tr 76:8-16).

-4-

SD cards.[8]  (Tr. 26:20-25).  Defendant then admitted to having acquired files depicting sexually explicit images of minors from the Internet over a period of years.  (Tr. 28:2-7).

After this admission, SA MacDonald and SA Meyer testified that SA Meyer then advised Defendant of his Miranda warnings.  (Tr. 28:9-13, 77:12-23).  Defendant acknowledged his rights by executing a form FD-395 titled "Advice of Rights."  (Gov. Ex. 14).  SA MacDonald and SA Meyer testified that Defendant then stated that although he wished to speak with the agents, he might not answer every question.  (Tr. 28:14-17, 79:12-13).  Defendant was not placed under arrest or restrained in any way at this time. (Tr. 31:1-5, 79:14-25).  Defendant then admitted to the agents, among other things, that he saved his collection of child pornography to the SD cards and sent the package in question to Canada.  (Tr. 32:3-8, 80:19-21).  After the interview was concluded, Defendant was placed under arrest.[9]  (Tr. 82:6-12).

### III.   ANALYSIS

Defendant filed two Motions to Suppress.  (Docs. 24, 27).  In Defendant's Motion to Suppress filed on November 30, 2012, he requests suppression of the evidence recovered from the first search warrant issued by Magistrate Judge Joel B. Toomey.

---

[8]  This statement was inaccurate because SA MacDonald had not yet run the forensic program on Defendant's computer.  According to SA MacDonald, the computer at Defendant's residence had an operating system which required it to be brought into the office to conduct a complete review.  (Tr. 15:5-9).  SA MacDonald testified that he falsely told Defendant that he had found images on child pornography on his computer because he had reason to believe that Defendant was being untruthful to SA Meyer.  (Tr. 27:10-16).

[9]  According to SA Meyer, the entire search warrant execution lasted around 4 hours. (Tr. 81:4).  During that time, SA Meyer spent approximately 1 hour talking with Defendant.  (Tr. 81:13).

Specifically, Defendant requests suppression of the images and videos contained on the two SD cards. (Doc. 24).

In Defendant's Motion to Suppress filed on December 4, 2012, he requests suppression of any and all oral statements made to Special Agents Meyer and MacDonald or any other law enforcement agents on September 7, 2012, in which he admits downloading child pornography, admits to sending images of child pornography to Canada and admits to downloading the images of child pornography found on two SD cards. (Doc. 27). The Court will address each of Defendant's Motions.

### A. Defendant's Motion to Suppress Physical Evidence

Defendant seeks to suppress the evidence contained on the two SD cards, arguing that the Affidavit and application failed to establish probable cause for the issuance of the warrant. Defendant further argues that the agents could not in "good faith" believe that probable cause existed to search. The Court will address each of these arguments.

#### 1. Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. A substantial basis for probable cause exists where the totality of the circumstances set forth in the affidavit provides sufficient information for a judge "to determine that there is a fair probability that contraband or evidence of a crime will be found in a particular place." U.S. v. Gonzalez, 940 F.2d 1413, 1419 (11th Cir. 1991) (citing Illinois v. Gates,

462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332-33 (1983)); United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999).  "The nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation." United States v. Jenkins, 901 F .2d 1075, 1080 (11th Cir. 1990) (quoting United States v. Lockett, 674 F.2d 843, 846 (11th Cir. 1982)).

This Court, in reviewing the issuance of a search warrant by a judge, is not to conduct a de novo probable cause determination, but should give deference to the decision of the judge issuing the warrant. Massachusetts v. Upton, 466 U.S. 727, 732, 104 S.Ct. 2085, 2088 (1984) (per curiam).  The role of the reviewing court is merely to decide whether the evidence viewed as a whole provided a "substantial basis" for the finding of probable cause at the time the warrant was issued.  Id. at 732-33, 104 S.Ct. at 2088.  Specifically, when reviewing a warrant application, a judge is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and the 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000) (citing Gates, 462 U.S. at 238, 103 S.Ct. 2317).

Here, the Affidavit supporting the application for the search warrant sets forth, among other things, the following facts:

4.  Initial inspection of one of the SD cards revealed "numerous images" of minor boys, partially dressed and nude, at least one of whom was prepubescent.

> 5. Further inspection of the 32GB SD card revealed that it contained "thousands of pictures of nude boys and teenagers."
>
> 6. Further inspection of the 4GB SD card revealed, among other things, images of a prepubescent boy who is "standing nude with his hands behind his head and exposing his penis." These images "had a watermark of www.boyhoodparadise.com."
>
> 7. The 4GB SD card also contained "a second image of a young boy of approximately 10 years old...," who "was nude except for a pair of white socks," and "was depicted holding his hands behind his back, standing exposing his penis and displayed no pubic hair or muscle development. This was one picture of a series featuring the same child."
>
> 8. The 4GB SD card also contained "a third image of a young boy with a white backdrop. He was depicted sitting on his knees with his hands on his hips. He had short brown hair and was nude. He had no pubic hair, was very thin and did not display the muscle development associated with puberty. The marking on this picture was boy-art-org and it stated "new featured young boy -art community."

(Gov. Ex. 12, pp. 21-24). Based on this information, there was certainly a fair probability that images of child pornography would be found on the SD cards.

Child pornography is defined at 18 U.S.C. §2256(8). In sum, it provides that child pornography is "any visual depiction ... of sexually explicit conduct where –

> (A) The production of such visual depiction involves the use of a minor engaging in sexually explicit conduct."

18 U.S.C. §2256(8). Sexually explicit conduct is defined by 18 U.S.C. § 2256(2)(A) to include "lascivious exhibition of the genitals or pubic area of any person." In <u>United States v. Williams</u>, the court noted that most lower courts have embraced the following six-factor "lascivious exhibition" test:

-8-

    1.     whether the focal point of the visual depiction is on the child's genitalia or pubic area;

    2.     whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

    3.     whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

    4.     whether the child is fully or partially clothed, or nude;

    5.     whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and

    6.     whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

444 F.3d 1286, 1299 (11th Cir. 2006), rev'd on other grounds, 553 U.S. 285 (2008). A review of the descriptions of the images set forth in the Affidavit confirms that they meet the definition of child pornography, that is, "lascivious exhibition of the genitalia," under Section 2256(2)(A).

Indeed, as stated above, the Court is required to consider the totality of the circumstances set forth in the affidavit in determining probable cause. United States v. Kapordelis, 569 F.3d 1291, 1310 (11th Cir. 2009). Here, SA Meyer's Affidavit contained detailed descriptions of images of prepubescent minors posed to display their genitals. In addition, the Affidavit advised of Defendant's prior conviction for child molestation, and the presence of a camera phone, a tripod, and small swim suits also inside the package in question. See (Gov. Ex. 12).

For the foregoing reasons, the undersigned concludes that the Affidavit sufficiently established probable cause for the issuance of the search warrant issued by

Magistrate Judge Toomey on August 23, 2012 (Doc. 12A).  Alternatively, as explained below, law enforcement officers relied in good faith on the warrant and therefore, the evidence found on the SD cards need not be excluded.

### 2.     Good Faith Reliance on the Search Warrant

There is an exception to the Fourth Amendment exclusionary rule when law enforcement officers reasonably and in good faith rely on a facially valid search warrant issued by a neutral judicial officer that is later determined to be invalid.  United States v. Leon, 468 U.S. 897, 926 (1984).  "The Leon good faith exception applies in all but four limited sets of circumstances," United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002), only one of which Defendant quarrels with here.  That is, when a warrant affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. (quotation and citation omitted).  In determining whether officers reasonably relied on a search warrant, the focus is on a "reasonably well trained officer and is based upon the totality of the circumstances." Id. at 1318 (quotation and citation omitted).  In addition, courts may "look beyond the four corners of the affidavit and search warrant" to determine whether officers' reliance on the search warrant was reasonable. Id.

For the above stated reasons supporting Magistrate Judge Toomey's probable cause finding, the undersigned finds alternatively that the Affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

**B.     Defendant's Motion to Suppress Statements, Admissions and Confessions**

Defendant also seeks suppression of any and all oral statements made to Special Agents Meyer and MacDonald or any other law enforcement agents on September 7, 2012, in which he admits downloading child pornography, admits to sending images of child pornography to Canada and admits to downloading the images of child pornography found on two SD cards from his personal computer.  First, Defendant argues he was subjected to custodial questioning without being advised of Miranda warnings.  Second, Defendant contends his statement was not voluntary.  The Court will address each of these arguments.

**1.     Nature of the Questioning (Custodial v. Noncustodial)**

"Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" Oregon v. Mathiason, 429 U.S. 492, 495 (1977); see also United States v. Acosta, 363 F.3d 1141, 1148 (11th Cir. 2004). "Two discrete inquiries are essential to the determination" of whether someone is "in custody" for Miranda purposes.  Thompson v. Keohane, 516 U.S. 99, 112 (1995). "[F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave."  Id. (footnote omitted).  In deciding whether a reasonable person would have felt free to leave, courts look to the totality of the circumstances and apply an objective standard; subjective beliefs of the defendant and of law enforcement are irrelevant.  United States v. Brown, 441 F.3d 1330, 1347 (11th

Cir. 2006) (citations omitted). "Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve 'the ultimate inquiry': 'was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" Thompson, 516 U.S. at 112 (internal alteration omitted) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)).

Here, after reviewing the totality of the circumstances, the undersigned finds that Defendant was not "in custody" and a reasonable person would have felt free to leave. The undersigned relies on the following facts in making this finding: (1) Defendant was told he was not under arrest and he was free to leave; (2) the interview took place at Defendant's home; (3) Defendant was allowed to move about the property; (4) Defendant was not restrained; (5) there was no physical contact between Defendant and the law enforcement officers; and (6) the officers did not brandish their weapons.

Although "[n]o particular fact in the 'custody' analysis is determinative," the Eleventh Circuit has attached greater significance to whether the defendant was unambiguously advised that he was free to leave and was not in custody. Brown, 441 F.3d at 1347-49. Here, Special Agents MacDonald and Meyer testified that Defendant was advised that he was not under arrest and was free to leave. Defendant provided no evidence which disputed this testimony.

Another factor is whether the interview took place at the defendant's home or place of residence. Id. at 1347-49. The Brown Court found significant that the interview took place in a home where the defendant "often resided." Id. at 1348. Here, the interview took place outside Defendant's home. Defendant's suggestion that he was

somehow confined by the agents is unavailing. Defendant was free to move about the property and did so at his leisure. See Brown, 441 F.3d at 1348-49 (noting "[a]lthough an officer accompanied him throughout the house for safety reasons [during the execution of a search warrant], he was free to eat, smoke, use the phone, and move about as he wished"). The agents were not physically blocking Defendant from leaving the property or confining him in any way.

Prior to his arrest, Defendant was never handcuffed. Although it is true that there were a number of armed officers present at the search, guns were not drawn. See United States v. Long, 866F.2d 402, 405 (11th Cir. 1989) (noting a reasonable person may not feel free to leave if, "for example, ... the officers brandished weapons.") (citation omitted). Again, Defendant provided no evidence to dispute any of these findings.

For the foregoing reasons, the undersigned finds that a reasonable person would have felt free to leave; therefore, Defendant was not in custody and Miranda warnings were not required.

### 2. Voluntariness of Statement

Due process requires that a confession be voluntary to be admitted at trial. See Colorado v. Connelly, 479 U.S. 157, 163 (1986). In assessing whether a confession is voluntary, courts look to the totality of the circumstances to determine "whether a defendant's will was overborne at the time he confessed," or whether the confession was the "product of a rational intellect and a free will." Reck v. Pate, 367 U.S. 433, 440 (1961) (quotation and citations omitted); see also Arizona v. Fulminante, 499 U.S. 279, 285-86 (1991); Connelly, 479 U.S. at 176-77. The inquiry typically focuses on police

overreaching. Connelly, 479 U.S. at 163-64. Relevant factors include the defendant's age, education, intelligence, whether Miranda warnings were given, the length of detention (if any), the repeated and prolonged nature of the questioning, and the use of physical punishment such as deprivation of food or sleep. See, e.g., Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

Here, upon review of the totality of the circumstances, the undersigned finds Defendant's statements were voluntary. Some of the findings with regard to whether Defendant was "in custody" are also relevant here. In addition to those, there were no threats or promises made. Although there was no testimony as to Defendant's level of education at the time, Defendant's answers seemed to be coherent and responsive to the questions asked and the agents did not suspect him to be impaired in any way.

SA MacDonald may have been deceptive when he told Defendant that he had already found evidence of child pornography on his computer, when he had not yet completed the search of the computer. This type of deception, however, did not overcome Defendant's free will.[10] See, e.g., United States v. Castaneda-Castaneda, 729 F.2d 1360, 1363 (11th Cir. 1984) (stating "the police's use of a trick alone will not render a confession involuntary") (citations omitted); United States v. Bell, 367 F.3d 452, 461 (5th Cir. 2004) (same) (citations omitted).

Simply put, the undersigned is not convinced that Defendant's will was overborne; to the contrary, his statement was the product of rational intellect and free

---

[10] Defense counsel agrees that officers may make this type of misrepresentation when confronting a subject, and the law is settled on this point. (Tr. 92:2-5).

will.  See Reck, 367 U.S. at 440; Fulminante, 499 U.S. at 285-86; Connelly, 479 U.S. at 176-77.  Therefore, his statement was voluntary.

## IV.    CONCLUSION

The Affidavit established sufficient probable cause for the issuance of a search warrant for the SD cards.  Alternatively, the officers relied in good faith on the warrant and suppression is not appropriate.  Defendant was not in custody at the time he gave the statements of admission to the law enforcement officers, and his statements were voluntary.  Accordingly, after due consideration, it is respectfully

**RECOMMENDED**:

Defendant's Motions to Suppress (Docs. 24, 27) be **DENIED**.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this  18th  day of January, 2013.

                                                                    _____
                                                                    MONTE C. RICHARDSON
                                                                    UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record